# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 5, 2026

Lyle W. Cayce
Clerk

No. 26-30410

In re Prime Holdings Insurance Services, Incorporated;
Prime Insurance Company,

*Petitioners*.

_____

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 2:25-CV-1124

_____

Before Elrod, *Chief Judge*, and Richman and Duncan, *Circuit Judges*.
Per Curiam:[*]

Prime Holdings Insurance Services, Inc., and Prime Insurance Co. (collectively, Prime) petition for a writ of mandamus directing the district court to vacate orders compelling production of materials that Prime claims are protected by the attorney–client privilege and work-product doctrine. The district court orders apparently rest on an incorrect legal standard for anticipatory waiver, which turns on whether the privilege holder has committed itself to a course of conduct that will require disclosure of privileged material. For that reason, and because that error cannot be remedied adequately on ordinary appeal, we GRANT the writ.

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 26-30410

I

This action originates from a 2017 motor-vehicle accident involving Elvis Thompson, an employee of Terry Graham Trucking, Inc. The accident produced three state-court judgments exceeding the limits of an insurance policy issued by Prime. In 2022, Prime and TGTI entered a settlement resolving claims between them. After involuntary bankruptcy proceedings were filed against TGTI and Thompson, the bankruptcy trustee, Lucy Sikes, brought this action seeking, among other relief, to avoid the settlement and pursue bad-faith claims against Prime.

Prime has denied liability and pleaded several affirmative defenses in its answer. As relevant here, Prime asserts its good faith; alleges that its claims-handling practices conformed to industry standards; maintains that its coverage positions and its efforts to evaluate and settle claims were reasonable; and invokes its insured's reciprocal duty of good faith. Prime represents that it will establish those defenses through the factual record of its claims-handling conduct, not by relying on advice of counsel or counsel's mental impressions.

During discovery, the Trustee moved to compel documents identified on Prime's privilege log. Prime asserted attorney–client privilege and work-product protection. After reviewing the materials *in camera*, the district court ordered Prime to produce the documents to the Trustee. In so ordering, the district court stated only that "the Trustee is entitled to review these documents" and instructed the Trustee to keep them under seal. Prime moved for reconsideration. The district court denied Prime's motion, explaining that "much of the information was not attorney–client privileged or work product," that the underlying action involved bad faith, and that "[t]he interactions between the attorneys go[] to the heart of the bad faith claims and [are] discoverable." The district court later entered a

2

supplemental production order identifying specific documents for production.

The district court's statement that "[m]uch of the information provided for in camera inspection was not attorney–client privileged or work product" does not identify which documents fall outside those protections or explain why it does not qualify.[1]  As in *In re Itron*, we assume without deciding that at least some of the compelled materials are protected.  883 F.3d 553, 557 (5th Cir. 2018).  The parties remain free on remand to dispute the status of particular documents.  We decide only that there is no anticipatory waiver based upon relevance.

## II

Mandamus is a "drastic and extraordinary" remedy.  *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380 (2004) (quoting *Ex parte Fahey*, 332 U.S. 258, 259 (1947)).  To grant a writ of mandamus, we must determine (1) whether the petitioner has demonstrated that it has "no other adequate means to attain the relief [it] desires"; (2) whether the petitioner's "right to issuance of the writ is 'clear and indisputable'"; and (3) whether we, in the exercise of our discretion, are "satisfied that the writ is appropriate under the circumstances."  *Id.* at 380–81 (quoting *Kerr v. United States Dist. Ct. for N. Dist. of Cal.*, 426 U.S. 394, 403 (1976)) (citing *Kerr*, 426 U.S. at 403).  Although these requirements are demanding, we conclude that Prime has met its burden.

---

[1] The district court did not meaningfully distinguish between attorney–client privilege and work-product protection or identify the standard that it used to determine whether either doctrine applied.  Because the doctrines are distinct, we address the district court's anticipatory-waiver reasoning as to attorney–client privilege and leave the application of the governing work-product standards to the district court on remand.

No. 26-30410

A

First, Prime must show inadequacy of relief by other means. "[M]andamus is an appropriate means of relief if a district court errs in ordering the discovery of privileged documents, as such an order would not be reviewable on appeal." *In re Avantel, S.A.*, 343 F.3d 311, 317 (5th Cir. 2003) (citing *In re Occidental Petroleum Corp.*, 217 F.3d 293, 295 (5th Cir. 2000)). Post-judgment review is generally inadequate when erroneous disclosure has destroyed the confidentiality that privilege protects. In *Mohawk Industries, Inc. v. Carpenter*, the Supreme Court determined that disclosure orders adverse to the attorney–client privilege do not qualify for immediate appeal under the collateral-order doctrine, making mandamus the primary interlocutory vehicle for relief. 558 U.S. 100, 109–12 (2009).

We have applied this principle when both attorney–client privilege and work-product immunity is asserted, granting mandamus relief when the requested documents "go to the heart of the controversy between the parties," finding that "[e]rroneous disclosure of these documents could be irreparable." *In re Burlington N., Inc.*, 822 F.2d 518, 522–23 (5th Cir. 1987).

That principle applies here. The requirement that the Trustee keep the documents under seal protects them from public dissemination; it does not restore their confidentiality after Prime's litigation adversary has viewed them. Nor does it matter that the documents concern completed state-court proceedings. The district court has ordered them produced for use in this live action, and post-judgment review cannot undo that disclosure. What is more, Prime sought reconsideration, but the district court adhered to its production ruling. Prime has no adequate alternative means to protect the asserted privileges.

4

B

A petitioner has a clear and indisputable right to mandamus only when the district court has committed a "clear abuse[] of discretion that produce[s] patently erroneous results." *In re JPMorgan Chase & Co.*, 916 F.3d 494, 500 (5th Cir. 2019) (alterations in original) (quoting *In re Lloyd's Reg. N. Am., Inc.*, 780 F.3d 283, 290 (5th Cir. 2015)). "By definition, a district court abuses its discretion when it makes an error of law or applies an incorrect legal standard." *Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468, 474 (5th Cir. 2011) (citing *Koon v. United States*, 518 U.S. 81, 100 (1996)). The orders here reflect such an error.

The parties agree that Louisiana law governs the attorney–client privilege here. *See* Fed. R. Evid. 501. Under Louisiana law, "[a] litigant's pleading of a claim or defense to which his attorney–client communications are relevant does not by such pleading alone waive his attorney–client privilege." *Smith v. Kavanaugh, Pierson & Talley*, 513 So. 2d 1138, 1141 (La. 1987). Instead, the pleading must commit the privilege holder to a course of action that will "inevitably require[]" the introduction of privileged communications at trial. *Id.* at 1144; *accord id.* at 1141. Waiver therefore does not turn on relevance, importance, or the opposing party's need for the evidence. *Id.* at 1145–46. It turns on the privilege holder's affirmative use of the communications in their pleadings. *Id.* at 1144.

This court's precedent follows the same rule. *Itron* determined that a privilege holder waives the privilege by affirmatively relying on attorney–client communications in its pleadings to support an element of a claim or defense.[2] 883 F.3d at 558–60. "[R]elevance is not the standard,"

---

[2] *Itron* applied Mississippi law, "which govern[ed] Itron's causes of action." 883 F.3d at 557. In *In re Schlumberger Tech. Corp.*, we explained that *Itron* reflects "the general approach to the question" 818 F. App'x 304, 307 (5th Cir. 2020) (citing *Itron*, 883

even if "one might conclude [that] the facts to be disclosed are vital, highly probative, directly relevant[,] or even go to the heart of an issue." *Id.* at 561 (emphasis omitted) (quoting *Rhone–Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 864 (3d Cir. 1994)). For waiver to occur, the client must rely on privileged advice to make its case. *Id.* In *Schlumberger*, we applied that principle to a good-faith defense, concluding that a defendant did not waive privilege because its answer did not invoke advice of counsel, even though privileged communications might bear on its asserted beliefs. *In re Schlumberger Tech. Corp.*, 818 F. App'x 304, 307–08 (5th Cir. 2020).

The same conclusion follows here. The affirmative defenses identified in Prime's pleadings assert good faith and objective reasonableness. They do not mention attorneys, attorney–client communications, or an advice-of-counsel defense. Prime maintains that it has not committed to rely on privileged communications or counsel's mental impressions. The Trustee contends that Prime's defenses will require testimony or evidence from its attorneys. However, an opposing party's prediction that privileged material will be useful, or even central, to a disputed issue is not the privilege holder's affirmative use of that material. On the present record, Prime has not committed itself to proving its defenses through privileged communications. If Prime later chooses to do so, the waiver analysis may change. It has not done so merely by pleading these defenses.

The district court applied a different rule. Its explanation that attorney interactions "go[] to the heart of the bad faith claims and [are] discoverable" rests on the same relevance-based approach rejected in *Smith*

---

F.3d at 561). No one in this proceeding disputes that *Itron*'s conclusion aligns with Louisiana law as relevant here.

and *Itron*. The district court did not find that Prime would be forced "inevitably" to rely on privileged communications, *see Smith*, 513 So. 2d at 1144, nor did it identify any affirmative use of those communications in Prime's pleadings. Because the district court treated relevance as sufficient to overcome the asserted privilege, it applied an incorrect legal standard. That error is clear, and the resulting production orders are therefore erroneous to the extent that they rest on anticipatory waiver.

The Trustee offers other possible grounds for production, including that some documents were never privileged or work product, that certain communications fall within the crime-fraud exception, and that Prime's counterclaim is a separate source of anticipatory waiver specifically regarding attorneys' fees. The challenged orders do not identify which documents, if any, the district court ordered Prime to produce on those grounds, nor do they make the findings needed to evaluate those alternative grounds of production. We decline to decide those document-specific questions. On remand, the district court may determine whether particular materials are protected, whether Prime has affirmatively relied on any protected communication in its pleadings, whether an exception applies, and whether the requirements for disclosure of work product are satisfied. Our holding does not require a document-by-document written opinion in every privilege dispute, only the application of correct legal standards.

C

Correcting this error is an appropriate exercise of our discretion. The attorney–client privilege exists "to encourage full and frank communication between attorneys and their clients." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). That purpose would be undermined if a party lost the privilege whenever legal advice became relevant to a later dispute about good faith or reasonableness. As we explained in *Itron*, such a rule risks making

waiver nearly automatic in cases involving a party's knowledge or state of mind. 883 F.3d at 568. Likewise, *Schlumberger* recognized that allowing the same error to proliferate could discourage parties from seeking legal advice in the first place and create confusion among district courts regarding the correct legal standard. 818 F. App'x at 308.

The remedy is correspondingly limited. We do not hold that every document on Prime's privilege log is protected or immune from discovery. We hold only that the district court may not compel protected material only because it is relevant or goes to the heart of the Trustee's claims. Vacatur will permit the district court to reconsider the motion to compel under the governing standards while preserving its authority over discovery.

## III

Prime's petition for a writ of mandamus is GRANTED. The district court's June 23, 2026, production order and June 26, 2026, order denying reconsideration and order for supplemental production are VACATED. We direct the district court to reconsider the Trustee's motion to compel in a manner consistent with this opinion.